**M. J. TIAN, Appellant,**

v.

**J. L. SIMMONS, Appellee.**

No. 3528.

Court of Civil Appeals of Texas.

Waco.

April 17, 1958.

Dodson, Reagan & Welch, Marlin, for appellant.

Bradley & Geren, Reed & Cannon, Groesbeck, for appellee.

McDONALD, Chief Justice.

This case involves the title to an 80-foot by 50-foot tract of land in Mexia, Texas, upon which is a filling station. Parties will be referred to as in the Trial Court. Plaintiff Tian filed suit in trespass to try title against defendant Sim-. mons for title and possession of a 50 x 80 foot piece of property upon which was a filling station, located in Mexia, Texas. Defendant Simmons filed a plea of not guilty, and by cross-action asked for title and possession of the property. Defendant Simmons, in his cross-action, plead that Tian was indebted to him for $1,200 and that Tian agreed to convey to him the property in controversy in consideration of such debt; that in accordance with such agreement Tian obtained a deed to the property from the owners Echols and wife and placed defendant (Simmons) in possession of the property; and that he, defendant, had made valuable improvements on the proper-

ty; paid taxes on it; and claimed it as his own.

Trial was to a jury which found, in answer to special issues:

1) That plaintiff Tian owed defendant Simmons $1,200 for work defendant had performed for plaintiff, at the time the deed from Echols to Tian was executed.

2) Plaintiff Tian agreed to purchase the property involved from Echols and convey same to defendant for the cancellation of the $1,200 debt.

3) There was no agreement that defendant was to pay plaintiff for the property out of earnings of his wife or from earnings of the operation of the filling station and garage.

4) That defendant Simmons made valuable improvements on the property.

The Trial Court entered judgment on the verdict decreeing that plaintiff Tian take nothing and that title and possession of the property in controversy be vested in defendant Simmons.

Plaintiff Tian appeals, contending that the evidence is insufficient to support a parol sale of real estate.

 The Trial Court, by its judgment, decreed a parol sale of real estate. The Statute of Frauds, Vernon's Ann.Civ.St. art. 3995, requires that a sale of real estate or a contract for same be in writing to be enforceable. To relieve a parol sale of land from the operation of the Statute of Frauds three things are necessary: 1) Payment of the consideration, whether it be in money or services; 2) possession by the vendee; 3) the making by the vendee of valuable and permanent improvements. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216.

The evidence in this case consists of the testimony of eight witnesses and six exhibits. A review of the evidence is deemed necessary. Plaintiff Tian introduced a deed to the property in controversy from Killingsworth to Sam Echols and wife; and a deed from Echols and wife to Tian dated 28 November 1951, which deed recited a consideration of "$10.00 and other good and valuable consideration."

*The first witness, Sandifer*, testified as to the reasonable rental value of the property in controversy. Thereupon the plaintiff rested.

*Defendant Simmons was the second witness.* He testified that he was 70 years old; had been in Mexia for 21 years; that he had known plaintiff Tian since 1950; that in November 1950 he moved onto Tian's farm and went to work for Tian; that Tian hired him to work his hogs, horses, chickens, and do general work about the place, and that Tian agreed to pay him $100 per month; that Tian had from 100 to 175 hogs in 10 different pens; that he fed them eight barrels of slop, made up at night, and bucketed out to the hogs next morning; that water for the operation was hauled from Mexia part of the time; that Tian had 39 mares and a stud horse which he fed and looked after, and that he fixed fences and did general work and looked after about 300 chickens; that he worked from sun-up to sun-down and sometimes before day; that Tian did not pay him his salary because he was in a property settlement with his wife, and said he would pay him later; that he, Simmons, contacted Echols relative to selling the filling station; that he told Tian about the station and told him he wanted the station, and Tian said: *"Go make the trade, I will pay for it and that will even us up";* that he had been working for Tian about 12 months; Tian told him he was buying him the station in cancellation of the debt; he contacted Judge Watkins about making the deed; the deed was made on *28 November 1951* and Simmons went into possession on *24 December 1951* and thereafter put a new roof on the building and made some $400 worth of other needed improvements; that Simmons bought the stock of groceries, gasoline and oil in the station from Echols when he

took possession and paid Echols $502.28 for same; he paid him in cash and the payment included four $100 bills; Mr. Fain Carroll and wife had inventoried the stock and saw Simmons pay Echols the $502.28; the groceries were not thereafter sold but eaten by Simmons' family and Carroll's family; that for some two months after getting possession and going into the filling station Simmons continued to go out and help Tian at the farm; Simmons has been continuously in possession of the filling station property since December 1951; Simmons thought that the property had been deeded to him until some six months after he went into possession; Simmons relied on what Tian told him that the property would be deeded to him, and moved in and made improvements on the property relying on what Tian told him; Simmons cancelled the debt Tian owed him in payment for the filling station; Simmons testified that he *did not* agree to pay Tian for the filling station out of his wife's pay at the washateria or out of the station's earnings.

*J. G. Slade was the third witness.* He testified that he lived near Tian's place in 1951; that he knew Tian and Simmons; that he had been to Tian's place and observed same during the year; that he saw Simmons working there, feeding the hogs; going to Mexia in the pickup, and doing general work.

*L. T. Sandifer* (1st witness), recalled to the stand, testified that he sold Simmons and Tian some lumber and iron for $65; that Tian paid for same by check; that they said they were going to build a wash and grease rack at the filling station; that so far as he knew the wash and grease rack was never built at the station.

*Owen F. Watkins*, the fourth witness, testified that he is a lawyer; that he knew Tian and Simmons; that he prepared the 28 November 1951 deed conveying the property in controversy from Echols to Tian; that Tian and Simmons came to his office a day or so prior to the drawing of the deed; that the gist of the conversation was that Tian was buying the property for Simmons and would turn it over to him and let him run it; the check Tian gave Echols for the property (and which is in evidence) was for *$1,250*; Mr. Tian stated he was buying the property for Mr. Simmons and was going to turn it over to him; Tian said Simmons was a good old man, had been mighty good to him and he was buying the property for Simmons; Tian did not say he owed Simmons any money or that he wanted title to go over to Simmons.

*M. J. Tian,* plaintiff, the fifth witness, testified that he owned a farm, ranch and orchard near Mexia in 1951; that Simmons came and wanted to rent a house on his place; that he told Simmons he was in litigation and would not rent the house, but that Simmons could stay there; that Simmons moved in around December 1950; that Simmons, with his permission, planted a garden; kept a mare and a colt; brought four cows to the place and milked them; that he never hired Simmons to work for him; that Simmons would hang around and help him feed; that he tried to run Simmons off; that he did not hire Simmons to work for him at any time; that Simmons approached him to buy the station for him; that Simmons told him his wife had a job at the washateria at $75 per month and that Carroll was a mechanic who would pay ½ of his earnings to Simmons to work at the station, and that if Tian would buy the station he would pay Tian for it out of his wife's pay and Carroll's commission; that he was not to give Simmons a deed until he paid him in full; that he gave $1,250 for the station and $300 for the accessories and $65 to Sandifer for some lumber to build a wash and grease rack at the station with; that the wash and grease rack was never built; that he took some of the materials to his farm; that he never promised Simmons to deed him the property before he paid for it; that he does not and did not owe Simmons any money; that he had 100 to

200 hogs; that Simmons' feeding them was on his own accord; that he did not tell Judge Watkins that Simmons was a good old man and he was buying the filling station for him; that Simmons was to pay him for the filling station out of his wife's wages and mechanic commissions; that he didn't owe Simmons and didn't postpone payment to him on account of his law suit with his wife; Tian later admitted he told Judge Watkins that Simmons was a good old man and he was buying the filling station for him—but that Simmons was to pay for it; Simmons didn't work for anyone else that year but he milked four cows and had a garden.

*Odell Sikes, the sixth witness,* testified that his mother lived near Tian; that he knows Tian and Simmons; that he was by the Tian place many times and saw Simmons feeding the hogs and doing general work; that in the latter part of November 1951 *he was on Tian's place talking to Tian and Simmons and that he heard Tian, in Simmons' presence, say that he was buying the filling station for Simmons and was going to give it to him for what he owed him;* that Tian and Simmons were talking about what Tian owed him and Simmons asked "When do you think you can pay me?" and Tian replied, "I am going to get that station and let you have it for what I owe you."

*Plaintiff Tian,* recalled to the stand, denied having made the statements that witness Sikes testified to.

*Fain Carroll,* the seventh witness, testified that he knew Simmons; that Echols, his wife, and Carroll's wife inventoried the filling station in December 1951; that he saw Simmons pay Echols for the contents of the station; saw four $100 bills and saw $10 and $20 bills; that he helped Simmons around the station after Sim-

mons took over; that Simmons continued to work at Tian's farm and feed Tian's hogs six weeks or two months after 24 December 1951.

*A. A. Mainord,* the eighth witness, testified that he worked for Tian part time feeding hogs in 1953 and that Tian paid him $2 per day; that he thought $2 per day was all the work he performed was worth.

Other exhibits in the case are Tian's check to Echols for $1,250; Tian's check for $300; Tian's check for $65; and Tian's notice to Simmons to vacate.

As noted, the jury in this case found that 1) plaintiff owed defendant $1,200 at the time of the execution of the deed from Echols to Tian; 2) Tian agreed to purchase the property for Simmons in consideration of the cancellation of the debt; 3) there was no agreement whereby Simmons was to pay Tian further for the property; 4) Simmons made valuable improvements on the property.

The cause is before us for review on the assignment that the evidence is insufficient to support a parol sale of real estate—or stated another way, insufficient to support the findings of the jury. Under such assignment of error it is our duty to weigh the evidence as a whole and determine whether or not it is sufficient to sustain the verdict and judgment. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. We have carefully weighed all of the evidence in this case and cannot say that the evidence is insufficient to support the verdict and judgment, or that the verdict and judgment are so against the great weight and preponderance of the evidence as to be manifestly unjust.

The judgment of the Trial Court is accordingly affirmed.